IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SCOTT L. ANDREWS; and CLAUDIA J. ROHR, Plaintiffs, vs. HAWAII COUNTY; et al., Defendants. | CIVIL NO. 13-00046 JMS/KSC ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR DAMAGES FILED JANUARY 28, 2013, DOC. NO. 21 |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS COMPLAINT FOR DAMAGES FILED
JANUARY 28, 2013, DOC. NO. 21**

## I. INTRODUCTION

On August 23, 2011, Plaintiffs Scott L. Andrews ("Andrews") and his

wife Claudia J. Rohr ("Rohr") (collectively, "Plaintiffs") filed this action asserting

claims pursuant to 42 U.S.C. § 1983 and state law against Hawaii County (the

"County"), Hawaii County Police Department ("HCPD") former Chief Lawrence

Mahuna ("Mahuna"), current Chief Harry Kubojiri ("Kuboriji"), Major Area-1

Operations Samuel Thomas ("Thomas"), officers Romeo Fuiava ("Fuiava"),

Richard Itliong ("Itliong"), John P. Stewart ("Stewart"), and George Makua

("Makua"), and corporation counsel Lincoln Ashida ("Ashida") (collectively

"Defendants"). Plaintiffs assert that Defendants violated Andrews' constitutional

rights in investigating and prosecuting Andrews for an incident that occurred at a beach park on April 21, 2008.

Currently before the court is Defendants' Motion to Dismiss Plaintiffs' Complaint, arguing that Plaintiffs have failed to state a plausible claim upon which relief can be granted. Based on the following, the court GRANTS in part and DENIES in part Defendants' Motion to Dismiss.

## II.  BACKGROUND

### A.    Factual Background

The Complaint consists of seventy-five paragraphs and twenty-eight pages, and often recites conclusory assertions of "deliberate indifference" and violations of constitutional rights in a non-linear time-line of events. From its review, however, the court provides the following recitation of events:

### 1.    *General Allegations*

Plaintiffs are a Caucasian married couple, originally from the mainland, who run a bed and breakfast establishment across from Hilo's beach parks. Doc. No. 1, Compl. ¶ 16. Plaintiffs assert that the County, Mahuna, Kobujiri, Thomas, and Ashida are "high-ranking officials" and have long been on actual notice that (1) the County has a racism problem where Caucasians are targeted for harassment and/or violence, *id.* ¶ 18; (2) members of the HCPD and

2

the Office of the Prosecuting Attorney repeatedly violated the constitutional rights

of Caucasians by turning a blind eye to the County's racially-motivated harassment

and discouraging reporting and prosecuting such race-based violence, *id.* ¶ 19; and

(3) HCPD officers repeatedly violated the constitutional rights of citizens by

subjecting them to discrimination and retaliation, fabricating and/or destroying

evidence, and causing malicious and selective prosecutions without probable

cause.  *Id.* ¶ 20.

The Complaint further asserts these Defendants had an official policy

that allowed citizens such as Plaintiffs to be abused by police officers, and further

promoted and retained HCPD officers who engaged in these practices.  *Id.* ¶ 22.

According to the Complaint, the County's pre-existing customs, policies, patterns

and/or practices of deliberate indifference to such civil rights abuses led to

(1) violations of Andrews' equal protection rights; and (2) retaliation and extortion

to prevent Plaintiffs from exercising their First and Fourteenth Amendment rights.

*Id.* ¶¶ 23, 24.

### 2. *The April 21, 2008 Incident*

The particular event that triggered this lawsuit occurred on April 21,

2008.  As a volunteer in the County's "Friends of the Park" program, Andrews is

authorized to trim the edge of the anchialine tidal pool at the Waiolena Beach Park,

and he was carrying out this task when Alexander Lewis, who is Hawaiian, began yelling and throwing small rocks at Andrews. *Id.* ¶¶ 40-41. Andrews called the police to handle the situation and attempted to complete his job. *Id.*

In response, Lewis waded across a shallow outlet towards Andrews and demanded that Andrews stop what he was doing and leave the park. *Id.* ¶ 44. When Andrews explained that he was a volunteer park caretaker, Lewis picked up two stones twice the size of his fists and hit Andrews with one on Andrews' knee cap. *Id.* ¶ 46. Lewis then advanced towards Andrews with the second stone, and Andrews held up the plastic guard of his idling weed-wacker to shield himself. *Id.* Lewis rushed at Andrews, grabbed the weed-wacker, and inadvertently caused it to engage and injure Lewis. *Id.* Lewis then knocked Andrews to the ground, and hit him over the head and chest with the rock and his fists, causing Andrews to fall unconscious. *Id.* ¶ 47. When Andrews regained consciousness, he called police and requested an ambulance. *Id.* ¶ 48.

### 3.    *HCPD's Investigation of the April 21, 2008 Incident*

At the Hilo Medical Center Emergency Room, Andrews was treated for a concussion, multiple contusions and abrasions, tachycardia, and a hypertensive crisis, while Lewis was given antibiotic ointment for eight or nine four-to-six inch skin abrasions. *Id.* ¶¶ 50-51. Before Andrews received any

treatment, however, Makua "tried to intimidate [Andrews] into not filing an assault complaint against Lewis," which Plaintiffs interpreted as Makua threatening criminal charges against Andrews if Andrews made a complaint against Lewis. *Id.* ¶ 54.  To allow Andrews to get treatment and given the threats by Makua, Rohr attempted to get Makua to leave, and in response Makua demanded that Rohr leave because she was interfering with his investigation.  *Id.* ¶¶ 57-58.  Rohr reported Makua's conduct to Thomas.  *Id.* ¶ 59.

After Andrews was released from the hospital, Plaintiffs went to the police station to ask officers to recover the stones Lewis used to hit Andrews.  *Id.* ¶ 60.  Makua refused, and Rohr again reported his conduct to Thomas.  *Id.*

Meanwhile, Itliong, who allegedly already held discriminatory animus against Plaintiffs for a previous complaint they made regarding a separate incident, responded to the dispatch call and intentionally failed to take fingerprint evidence from the weed-wacker.  *Id.* ¶¶ 62-63.  Itliong also allegedly broke the chain of custody for the weed-wacker by failing to (1) place it into evidence until two days after the April 21, 2008 incident, (2) account for its whereabouts until it was placed into evidence, and (3) photograph it to preserve its condition at the time of the incident.  *Id.* ¶ 64.

According to the Complaint, Makua, Fuiava, Itliong, and Stewart

conspired to fabricate evidence to contradict Plaintiffs' statements to protect Lewis and frame Andrews.  *Id.* ¶ 66.  To that end, they took the weed-wacker back to the beach park to take photographs with Lewis and his friends and family to support the false story that there were numerous witnesses as well as people swimming in the pond near where Andrews was trimming.  *Id.* ¶ 67.  Fuiawa, with Stewart's approval, also misrepresented Lewis' injuries as "lacerations" so that Andrews would wrongfully be charged with felony assault in the second degree.  *Id.* ¶ 69. Makua, Fuiava, Itliong, and Stewart further allegedly persuaded the intake deputy prosecutor not to file charges against Lewis and instead file unfounded charges against Andrews.  *Id.* ¶¶ 68, 70.

### 4.    *Prosecution of Andrews for the April 21, 2008 Incident*

Prosecution of Andrews for the April 21, 2008 incident occurred only after Plaintiffs gave the County notice that they were planning to file a civil action against the County.  Specifically, on November 29, 2010, Plaintiffs filed a "Proof of Loss" form with the County's clerk notifying the County of a potential lawsuit filed by Plaintiffs.  *Id.* ¶ 27.  After Ashida, the County's corporation counsel, declined to meet with Plaintiffs to discuss the claim, Plaintiffs filed a Complaint for damages in the United States District Court of the District of Hawaii, Civil No. 10-000749 DAE/KSC.  Plaintiffs assert that Defendants "instilled discriminatory, retaliatory animus against Plaintiffs" in the prosecutor's office "to selectively

prosecute" Andrews for the April 21, 2008 assault charge. *Id.* ¶ 29. According to Plaintiffs, Defendants knew that this assault charge "was unfounded and unjustified by standards prosecutors use," and that Defendants instigated these criminal charges to get an advantage in Plaintiffs' civil action and intimidate Plaintiffs into not pressing forward with their litigation. *Id.* ¶¶ 29-30.

To that end, deputy prosecutor Anson Lee persuaded detective James Gusman to reopen the closed investigation of the April 21, 2008 incident, and presented his case to the grand jury on January 26, 2011. *Id.* ¶¶ 31-34. According to Plaintiffs, Lee presented "highly prejudicial, misleading evidence" to the grand jury with the "intent to deny Defendant [Andrews'] Fourteenth amendment rights to equal justice, equal application of the law, and with intent to deny [Plaintiffs'] First and Fourteenth Amendment rights to access the courts for redress of grievances [in their civil action]." *Id.* ¶¶ 34-35. The Complaint outlines several alleged improprieties before the grand jury regarding speculative testimony, lack of disclosure of exculpatory evidence, bolstering of witness testimony, and suggesting incorrect facts. *Id.* ¶ 36.

Andrews was served the indictment on February 2, 2011, and was found not guilty by a jury on January 24, 2013. *Id.* ¶¶ 37-38.

## B.   Procedural Background

On January 28, 2013, Plaintiffs filed this action, asserting claims labeled (1) Monell Claim against Hawaii County (Count I); (2) Selective Prosecution (Count II); (3) Malicious Prosecution (Count III); and (4) Intentional Infliction of Emotional Distress and Loss of Spousal Consortium (Count IV).

On June 10, 2013, Defendants filed their Motion to Dismiss.  Doc. No. 21.  Plaintiffs filed an Opposition on August 23, 2013,[1] Doc. No. 26, and Defendants filed a Reply on August 28, 2013.  Doc. No. 28.  A hearing was held on September 16, 2013.

## III.  <u>STANDARD OF REVIEW</u>

Plaintiffs are appearing pro se; consequently, this court will liberally construe their pleadings.  *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants." (citing *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam).)).  A court's duty to read a pro se litigant's complaint liberally, however, does not relieve the court of its duty to determine whether the complaint meets the requirements of Rule 12(b)(6).

---

[1]  Defendants argue that the court should strike Plaintiffs' Opposition because it was filed one day late and after the court had already granted Plaintiffs an extension.  *See* Doc. No. 61, Defs.' Reply at 1-3.  The court declines this suggestion, but cautions Plaintiffs that they are expected to follow the Rules of this court, including all deadlines.

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, "the factual allegations that are taken

as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216.  Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8.  *Iqbal*, 556 U.S. at 679.

## IV.  ANALYSIS

Defendants raise various arguments that the Complaint fails to comply with Rule 12(b)(6).  The court addresses each argument in turn.

### A.    Claims Against Individual Defendants

Defendants argue, in largely conclusory fashion, that the Complaint fails to plead "any facts which would give rise to civil liability on the part of any of the named defendants."  Doc. No. 21-1, Mot. at 7.  The court disagrees -- the Complaint includes numerous factual allegations directed to the Defendants, and if Defendants believe that such allegations as to a particular Defendant are insufficient, they should have raised such argument.  The court therefore DENIES Defendants' Motion to Dismiss, to the extent it asserts that the Complaint falls to allege sufficient facts as to each Defendant.

///

///

**B.      County Liability (Count I)**

Defendants argue that Plaintiffs have failed to allege a plausible claim that the County is liable for any constitutional violations.  The court agrees.

The basic elements of a claim asserting government entity liability are well established:

> A government entity may not be held liable under 42 U.S.C. § 1983 unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights.  *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978). In order to establish liability for governmental entities under *Monell*, a plaintiff must prove "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (internal quotation marks and citation omitted; alterations in original).

*Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011); *see also Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013) ("Under *Monell,* municipalities are subject to damages under § 1983 in three situations: when the plaintiff was injured pursuant to an expressly adopted official policy, a long-standing practice or custom, or the decision of a 'final policymaker.'" (citing *Delia*

*v. City of Rialto*, 621 F.3d 1069, 1081-82 (9th Cir. 2010)).[2]

To allege a *Monell* claim in light of *Iqbal*, "allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr*, 652 F.3d at 1216). Further, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* (quoting *Starr*, 652 F.3d at 1216).

The Complaint asserts that the County's "high-ranking officials" have long been on actual notice that (1) the County has a racism problem where Caucasians are targeted for harassment and/or violence, Doc. No. 1, Compl. ¶ 18; (2) members of the HCPD and the Office of the Prosecuting Attorney repeatedly violated the constitutional rights of Caucasians by turning a blind eye to the County's racially-motivated harassment and discouraging reporting and prosecuting such race-based violence, *id.* ¶ 19; and (3) HCPD officers repeatedly

_____

[2] Also, where a plaintiff asserts supervisory liability, a "plaintiff must allege that every government defendant -- supervisor or subordinate -- acted with the state of mind required by the underlying constitutional provision." *See OSU Student Alliance v. Ray*, 699 F.3d 1053, 1070 (9th Cir. 2012) (discussing *Iqbal*).

violated the constitutional rights of citizens by subjecting them to discrimination

and retaliation, fabricating and/or destroying evidence, and causing malicious and

selective prosecutions without probable cause. *Id.* ¶ 20.  The Complaint further

alleges that the County had an official policy that allowed citizens such as

Plaintiffs to be abused by police officers, and further promoted and retained HCPD

officers who engaged in these practices. *Id.* ¶ 22.  According to the Complaint, the

County's pre-existing customs, policies, patterns and/or practices of deliberate

indifference to such civil rights abuses led to violations of Plaintiffs' constitutional

rights, and that these customs, policies, patterns and/or practices "of being more

concerned with protecting police officers' jobs and getting an advantage in any

civil suit by any means possible . . . was so closely related to Plaintiffs' injury that

it was the moving force causing Plaintiffs' injury." *Id.* ¶¶ 23-25.

       These conclusory allegations that the County has an impermissible

policy, custom, or practice are insufficient to establish a plausible basis for holding

the County liable.  The Complaint does not meet the *Iqbal* standard -- it includes

no factual allegations that (1) identify the particular policy, custom, or practice at

issue (including its content); (2) explain precisely how this policy, custom, or

practice amounts to deliberate indifference to Plaintiffs' constitutional rights; or

(3) explain how the particular policy, custom, or practice was the moving force

behind the constitutional violations alleged in the Complaint.  *See Starr*, 652 F.3d at 1216 (stating that the pleading "must plausibly suggest an entitlement to relief, such that it is not unfair to require [Defendants] be subjected to the expense of discovery and continued litigation").

In opposition, Plaintiffs set forth numerous facts, which they assert support that the County has an impermissible policy, custom, or practice.  *See* Doc. No. 26, Pls.' Opp'n at 3-21.  A motion to dismiss is judged by the allegations in the complaint, however, and additional facts asserted in an opposition cannot defeat such motion.  *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("'[N]ew' allegations contained in [an] opposition motion, [ ] are irrelevant for Rule 12(b)(6) purposes.  In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." (citing *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993))).  The court therefore DISMISSES the Complaint's § 1983 claims against the County, with leave to amend.

## C.     Plaintiffs' Claim for Selective Prosecution (Count II)

The basis of Plaintiffs' claim titled "selective prosecution" is that Defendants prosecuted Andrews for an assault stemming from the April 21, 2008 incident to force Plaintiffs to drop their civil suit against the County.  Doc. No. 1,

Compl. ¶¶ 26-38.

Defendants argue that Plaintiffs have not adequately alleged a selective prosecution claim.  To the extent Plaintiffs are indeed alleging a selective prosecution claim, the court agrees.  "The two elements of a selective prosecution claim are that others similarly situated have not been prosecuted and that the allegedly discriminatory prosecution of the defendant was based on an impermissible motive."  *United States v. Culliton*, 328 F.3d 1074, 1081 (9th Cir. 2003) (per curiam) (quoting *United States v. Balk*, 706 F.2d 1056, 1060 (9th Cir. 1983)).  Discriminatory enforcement is not limited to prosecution, and "may be shown through a variety of actual or threatened arrests, searches and temporary seizures, citations, and other coercive conduct by the police."  *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 920 (9th Cir. 2012).  And in order to state a claim of discriminatory effect, a plaintiff must "allege some facts, either anecdotal or statistical, demonstrating "that similarly situated defendants . . . could have been prosecuted, but were not."  *Id.* (quoting *United States v. Armstrong*, 517 U.S. 456, 463 (1996)).  Because the Complaint does not allege any facts suggesting that other similarly situated individuals have not been prosecuted, Plaintiffs have failed to allege a plausible claim for relief for selective prosecution.

But setting aside the title of this claim, the facts alleged suggest that

Plaintiffs are in fact asserting a claim for retaliatory prosecution.  To assert such

claim, Plaintiffs must establish "that the officials secured his arrest or prosecution

without probable cause and were motivated by retaliation against the plaintiff's

protected speech."  *See Beck v. City of Upland*, 527 F.3d 853, 864 (9th Cir. 2008)

(citing *Hartman v. Moore*, 547 U.S. 250 (2006)).  The Complaint asserts that

Defendants sought Andrews' prosecution in retaliation for Plaintiffs filing a federal

civil action, *see* Doc. No. 1, Compl. ¶ 29, and in their Opposition, Plaintiffs

confirm that they are asserting a retaliatory prosecution claim.  *See* Doc. No. 26,

Pls.' Opp'n at 22-23.  In reply, Defendants offer no argument as to why such

allegations are insufficient for a retaliatory prosecution claim.

  The court therefore GRANTS Defendants' Motion to Dismiss as to a

selective prosecution claim with leave to amend, but DENIES the Motion to

Dismiss as to the retaliatory prosecution claim.

## D. Malicious Prosecution (Count III)

  Defendants argue that Plaintiffs' malicious prosecution claim fails

because the grand jury made a determination of probable cause.  Doc. No. 21-1,

Defs.' Mot. at 11-15.  Based on the following, the court agrees.

  In order to prevail on a § 1983 claim of malicious prosecution, a

plaintiff must show "that the defendants prosecuted [him] with malice and without

probable cause, and that they did so for the purpose of denying [him] equal

protection or another specific constitutional right."[3] *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 919 (9th Cir. 2012) (quoting *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995)).  "In general, a claim of malicious prosecution is not cognizable under § 1983 'if process is available within the state judicial systems' to provide a remedy," although the Ninth Circuit has "held that an exception exists . . . when a malicious prosecution is conducted with the intent to . . . subject a person to a denial of constitutional rights."  *Id.* (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1031 (9th Cir. 1985) (en banc)).  "Malicious prosecution actions are not limited to suits against prosecutors but may be brought, as here, against other persons who have wrongfully caused the charges to be filed."  *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (citing *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1126-27 (9th Cir. 2002)).

       The court must look to Hawaii law "to determine the legal effect of the state court's action because [the Ninth Circuit has] incorporated the relevant elements of the common law tort of malicious prosecution into [the] analysis under § 1983."  *Id.*  "Under Hawaii law, a grand jury [] functions to determine whether probable cause exists [and] [t]here is also a presumption that the grand jury acted

---

[3] As held in *Albright v. Oliver*, 510 U.S. 266 (1994), "no substantive due process right exists under the Fourteenth Amendment to be free from prosecution without probable cause." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1069 (9th Cir. 2004).  A plaintiff may, however, base a malicious prosecution claim on the assertion that defendants acted with the purpose of depriving him of some other specific constitutional right.  *Id.*

upon sufficient and legal evidence." *McCarthy v. Mayo*, 827 F.2d 1310, 1317 (9th Cir. 1987) (citing *Hawaii v. Jenkins*, 1 Haw. App. 430, 620 P.2d 263, 267 (1980)); *see also Hawaii v. Apao*, 59 Haw. 625, 637-38, 586 P.2d 250 (1978) (providing that the burden is on the plaintiff to present evidence that the grand jury deliberations were so infected as to invalidate the indictment).

Applying these principles, because a grand jury indicted Andrews, there is a presumption that the grand jury acted independently in making the probable cause determination. And although the Complaint includes allegations of alleged misconduct before the grand jury by the deputy prosecutor (in a separate count of the Complaint), *see* Doc. No. 1, Compl. ¶ 36, the Complaint fails to tie this alleged misconduct to the grand jury's finding of probable cause. Allegations of misconduct by the prosecutor, standing alone, are insufficient to demonstrate that the grand jury failed to act upon sufficient evidence. In other words, there are no allegations explaining what evidence Defendants falsified that was presented to the jury, or what particular evidence Defendants withheld from the deputy prosecutor that would have invalidated probable cause. As a result, the allegations do not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

The court therefore GRANTS Defendants' Motion as to Count III,

with leave to amend.

## E.    Rohr as a Plaintiff

Defendants argue that Rohr's claims fail because they are all based on constitutional violations of Andrews' rights, not Rohr's rights.  Doc. No. 21-1, Mot. at 13-15.  To the extent Plaintiffs' claims are based on violations of Andrews' rights, the court agrees -- the Ninth Circuit has expressly held that "§ 1983 damages are available only for violations of a party's own constitutional rights." *Outdoor Media Grp., Inc. v. City of Beaumont,* 506 F.3d 895, 907 (9th Cir. 2007) (emphasis added); *see also Hunt v. City of Los Angeles*, 638 F.3d 703, 710 (9th Cir. 2011).  As a result, Rohr cannot assert a claims for selective prosecution and malicious prosecution, and the court GRANTS Defendants' Motion to Dismiss as to these claims.  Because granting leave to amend these claims would be futile, this dismissal is without leave to amend.

The court finds, however, that to the extent Count II asserts a claim for retaliatory prosecution, such claim asserts a violation of Rohr's constitutional rights -- the Complaint asserts that Defendants targeted and prosecuted Andrews in retaliation for both Andrews and Rohr filing a federal civil action.  As a result, this claim survives.  Further, because Defendants did not address Plaintiffs' pendent state law claims, these claims remain as well.

# V.  CONCLUSION

Based on the above, the court GRANTS in part and DENIES in part Defendants' Motion to Dismiss.  Remaining in this action are Plaintiffs' claims against all Defendants except the County for retaliatory prosecution and pendent state law claims.

By December 2, 2013, Plaintiffs may file a First Amended Complaint in which Andrews asserts claims for Selective Prosecution (Count II) and Malicious Prosecution (Count III), and both Plaintiffs assert claims for retaliatory prosecution and pendent state law claims against the County.  Leave is not granted for Plaintiffs to assert any claims beyond those addressed in this Order (*i.e.*, Plaintiffs may not assert new claims or wholly new factual allegations unrelated to the claims asserted in the Complaint).  If Plaintiffs wish to assert additional claims not raised in the Complaint or this Order, they must comply with Federal Rule of Civil Procedure 15.

Plaintiffs are notified that a First Amended Complaint will supersede the Complaint.  *Ferdik v. Bonzelet*, 963 F.2d 1258 (9th Cir. 1992); *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990).  After amendment, the court will treat the FAC as nonexistent.  *Ferdik*, 963 F.2d at 1262.

///

///

If Plaintiffs fail to file a First Amended Complaint by December 2, 2013, this

action will proceed as to the claims remaining in the Complaint.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, September 17, 2013.



 /s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Andrews et al. v. Hawaii Cnty. et al.*, Civ. No. 13-00046 JMS/KSC, Order Granting in Part and Denying in Part Defendants' Motion to Dismiss Complaint for Damages Filed January 28, 2013, Doc. No. 21